**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) CASE NO.18-10261 |
| SOUTHERN INDUSTRIAL | ) |
| MECHANICAL MAINTENANCE | ) CHAPTER 11 |
| COMPANY, LLC, | ) |
| | ) JUDGE JIMMY L. CROOM_ |
| Debtor. | ) |
| | ) |

**MOTION OF DEBTOR FOR INTERIM ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL, PROVIDING ADEQUATE PROTECTION, AND PRESCRIBING FORM AND MANNER OF NOTICE AND TIME <u>FOR FINAL HEARING</u>**

Southern Industrial Mechanical Maintenance ("<u>SIMMCO</u>" or "<u>Debtor</u>"), as debtor-in-possession, by and through its undersigned counsel, respectfully requests the Court to enter an interim order substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Interim Order</u>"): (i) authorizing the Debtor's use of "cash collateral" (as defined in 11 U.S.C. §363(a), "<u>Cash Collateral</u>"), (ii) providing adequate protection; and, (iii) prescribing the form and manner of notice and time for final hearing (the "<u>Final Hearing</u>") to consider the relief requested in the Motion. The Debtor further requests that, after the Final Hearing, the Court enter a Final Order (as defined herein) authorizing the Debtor's on-going use of cash collateral. In support of this motion (the "<u>Motion</u>"), the Debtor relies upon the *Declaration of David Blurton, President and CEO of Southern Industrial Mechanical Maintenance Company, LLC, in Support of Various First Day Relief* (the "<u>Blurton Declaration</u>") incorporated by reference and respectfully states:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory and legal predicates for the relief requested herein include sections 105(a), 363, and 506(a) of the Bankruptcy Code. Such relief is warranted pursuant to Bankruptcy Rules 6003 and 6004.

## RELIEF REQUESTED

3. The Debtor needs to continue its business operations to maintain the value of its business, and use of the Debtor's accounts receivable and existing cash is critical to the ongoing operation of the Debtor's business and this Chapter 11 Case. The Debtor seeks authority to use cash collateral on an immediate interim basis in accordance with a budget to be filed prior to the hearing and pursuant to an order entered after the Final Hearing throughout the course of this case.

4. Specifically, the Debtor requests entry of interim and final orders authorizing the Debtor to:

  a. use Cash Collateral for up to 45 days (the "<u>Specified Period</u>") in the amounts and for the purposes set forth in an approved Budget, which shall be submitted prior to the hearing and attached as <u>Exhibit A</u> to the Interim Order, subject to the terms of the Interim Order; including without limitation that Debtor may spend up to 105% of the total amount of expenditures set forth in the Budget during the Specified Period;

  b. grant the IRS and IberiaBank, the two parties known to be asserting an interest in the Debtor's Cash Collateral, adequate protection in the form of replacement liens and a super priority administrative claim, both of which shall be limited to the extent of any diminution in value of their respective interests in the PrePetition Collateral;

      c.      schedule a final hearing (the "Final Hearing") on or before March 15, 2018 to consider entry of an order (the "Final Order") granting the relief requested herein on a final basis and approve the form and notice with respect to the Final Hearing;

      d.      provide for immediate effectiveness of the Interim Order; and,

      e.      entry of a Final Order providing for the on-going use of Cash Collateral throughout this Chapter 11 case, including among other provisions a "carve-out" for professional fees in the Final Order.

5.      The Debtor requests that the duration of the Interim Order be the Specified Period of forty-five (45) days from the Petition Date. The Debtor asserts that use of the Cash Collateral for the expenses of the business set forth in an approved Budget is necessary to avoid immediate and irreparable harm to the estate in as much as the Debtor cannot remain in business absent payment of certain on-going operating expenses.

6.      The Debtor requests entry of the Interim Order as soon as possible. The Debtor will be unable to operate in Chapter 11 unless the Court enters the Interim Order promptly to provide for the use of Cash Collateral. Thus expedited approval of the Interim Order is in the best interests of the Debtor and its estate.

## BACKGROUND

7.      On February 9, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor is authorized to continue to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory creditors' committee has been appointed in this Chapter 11 Case.

8.      SIMMCO is a highly recognized mechanical contractor and pipe fabricator headquartered in Brownsville, Tennessee, that has been in business since 1977. Over the years, it

has worked on the construction of large industrial facilities, and it has several significant maintenance contracts.  Currently, SIMMCO employs approximately 75 individuals.

9. Prior to 2014, SIMMCO was a successful enterprise, with revenues of approximately $35 million in some years.  In 2014, SIMMCO entered into a subcontract related to the construction of a steel mill in Shreveport, Louisiana.  The project did not go well, and SIMMCO advanced large sums of money to complete its work on the project even though the general contractor refused to pay SIMMCO.

10. SIMMCO timely filed a lien for its work on the disputed Louisiana project and initiated litigation to collect the amounts owed to it.  SIMMCO sued for $27 million including overhead and profit. SIMMCO and the general contractor ultimately agreed to resolve the dispute through binding arbitration, and in December 2017, the arbitration panel awarded SIMMCO only $4.5 million. SIMMCO believes that most of this award will have to be paid to a company who funded the litigation and asserts a lien on the award.

11. SIMMCO had expected to use the award from the arbitration to pay down the debt owed to IberiaBank, its largest lender, as well as amounts owed to the IRS.  After the arbitration award was entered, IberiaBank demanded payment in full of all amounts owed and initiated an action in federal district court seeking appointment of a receiver.

12. As a result of the Louisiana project problems and costs advanced in connection with that project, SIMMCO was in 2015 and 2016 unable to pay other debts timely, including some of its withholding obligations to the IRS.  The IRS ultimately filed a lien for the amounts owed, which hampered SIMMCO's ability to get work on new projects, and SIMMCO's revenues dropped significantly.  SIMMCO's business has now stabilized, and prospects for new

business are good. SIMMCO filed this voluntary bankruptcy case with a goal of reorganizing its financial obligations and returning its business to pre-2014 levels of success.

13. The Debtor requires the use of Cash Collateral to pay certain expenses incurred in the normal course of its business. Collections on accounts receivables are the Debtor's only source of funds available to pay these expenses. Therefore, the Debtor's ability to use Cash Collateral to pay budgeted expenses is essential to the success of this Chapter 11 Case. Unless the Court authorizes the use of Cash Collateral, the Debtor will be unable to pay its employs or for goods and services essential to the on-going operation of the Debtor's business.

## PREPETITION SECURED LOANS

14. To the knowledge of the Debtor, two creditors assert an interest in the cash collateral that the Debtor seeks to use by this Motion. One creditor is the Internal Revenue Service ("IRS"), and the other is IberiaBank ("Iberia"). Iberia Bank filed a UCC-1 financing statement against Debtor on June 2, 2014 asserting a security interest in the Debtor's accounts and other assets. Iberia asserts that the Debtor owes it more than $28 million. On March 7, 2016 and on May 27, 2016, the IRS filed notices of Federal Tax Liens against the Debtor with the Register of Deeds for Haywood County, Tennessee. The liens are for unpaid taxes from 2015 and are in an amount exceeding $2.75 million.

15. Other creditors assert security interests in other assets owned by the Debtor, but not in the Cash Collateral that the Debtor seeks to use pursuant to this Motion. Iberia holds deeds of trust on real property owned by the Debtor, and there are also liens against these properties for unpaid property taxes. Iberia also asserts liens against many of the Debtor's vehicles and equipment. Fox, Swibel and attorney David Scotti assert liens against the Debtor's

recovery in the arbitration proceeding. Other creditors assert liens in individual pieces of equipment or vehicles.

## BASIS FOR RELIEF REQUESTED

16. Section 363(c)(2) of the Bankruptcy Code provides that the Debtor may not use, sell or lease cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

17. Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property . . . to be used, sold or leased, by the trustee, the court . . . shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). While the concept of adequate protection is not defined in the Bankruptcy Code, section 361 sets forth a non-exclusive list of examples as to how adequate protection may be provided, including cash payments and replacement liens. The purpose of adequate protection is to preserve the creditors' position and to protect the secured creditor from diminution of the value of its collateral during the bankruptcy process. *In re Worldcom, Inc.*, 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004); *In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

18. The Interim Order provides for the IRS and Iberia to be granted replacement liens and superpriority administrative expense claims under Sections 503 and 507 of the Bankruptcy Code. The replacement liens and superpriority administrative expense claims are limited to an amount equal to the diminution in value of these lenders' pre-petition collateral. These protections are adequate and necessary to protect the Prepetition Lenders from any diminution in

6

the value of their respective interests in the Cash Collateral as a result of the use of the Cash Collateral, the Carve Out, or the imposition of the automatic stay.

19. Furthermore, the Debtor needs the liquidity from the use of the Cash Collateral in order to conduct its post-petition operations in a manner that would maximize the value of its business and its assets. Without the use of Cash Collateral, the Debtor would not be able to fund this Chapter 11 Case and provide a distribution to the creditors.

20. The Debtor believes that the terms of the use of cash collateral are fair and reasonable, as they provide the IRS and Iberia with additional post-petition liens, while permitting the Debtor to continue operations in accordance with a budget, thereby providing the Debtor with time necessary to reorganize its business and provide a distribution to creditors.

21. The proposed Final Order will provide for a $100,000 carve-out for estate professionals form the collateral of the IRS and Iberia upon a default occurring under the order authorizing the on-going use of Cash Collateral. Prior to any such default, the Debtor will request authority to pay estate professionals (subject to all required Court approvals) to the extent provided for in the on-going Budget.

22. Accordingly, the Court should approve the Debtor's use of the Cash Collateral pursuant to the terms set forth in the Interim Order.

## **INTERIM RELIEF**

23. Federal Rule of Bankruptcy Procedure 4001 provides that a final hearing on a motion for authorization to use Cash Collateral may not be commenced earlier than 14 days after service of the motion. If the motion so requests, however, the court may conduct a preliminary hearing before such 14 day period expires and may authorize the use of cash collateral as is

necessary to avoid immediate and irreparable harm to the estate pending a final hearing. *See* FED.R.BANK.P. 4001(b)(2,3).

24. The urgent need to preserve the Debtor's businesses and avoid immediate and irreparable harm to the estates, as set forth in this Motion, makes it imperative that the Debtor be authorized to use Cash Collateral pursuant to the terms set forth in the Interim Order and summarized in this Motion, pending the Final Hearing. It is critical that the Debtor maintains the confidence of employees, suppliers, and customers in the Debtor's ability to meet their obligations while reorganizing its business. Continued cash availability is essential to the Debtor's ability to achieve this important aim. The denial of use of Cash Collateral for these purposes would result in the immediate shut-down of the Debtor's operations, irreparably damaging the Debtor's ability to maximize the value of its business and its assets and causing substantial prejudice to the Debtor's estate, its creditors, and other parties-in-interest.

25. Accordingly, this Court should enter an order authorizing the Debtor's use of Cash Collateral pursuant to the terms set forth in the proposed Interim Order pending a Final Hearing and should schedule a final hearing pursuant to Bankruptcy Rule 4001.

## NOTICE WITH RESPECT TO INTERIM HEARING

26. No trustee, examiner or creditors' committee has been appointed in this Chapter 11 Case. The Debtor has provided notice of this motion via email, fax, hand delivery or overnight mail to: (a) The United States Trustee, (b) the United States Attorney, (c) the Attorney General for the State of Tennessee, (d) IberiaBank, (e) Internal Revenue Service, (f) Pinnacle Bank (formerly Magna Bank), (g) Law Offices of David A. Scotti, (h) Red-D-Arc Inc., (i) Fox, Swibel, Levin & Carroll, LLP, (j) Hartford Accident and Indemnity Company, (k) Hartford Casualty Insurance Company, (l) local *ad valorem* taxing authorities, and (m) the twenty largest

unsecured creditors. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NOTICE WITH RESPECT TO FINAL HEARING

27. Pursuant to Bankruptcy Rule 4001, the Debtor respectfully requests that the Court authorize it to provide notice of the Final Hearing by serving a notice of the Interim Order upon: (a) The United States Trustee, (b) the United States Attorney, (c) the Attorney General for the State of Tennessee, (d) IberiaBank, (e) Internal Revenue Service, (f) Pinnacle Bank (formerly Magna Bank), (g) Law Offices of David A. Scotti, (h) Red-D-Arc Inc., (i) Fox, Swibel, Levin & Carroll, LLP, (j) Hartford Accident and Indemnity Company, (k) Hartford Casualty Insurance Company, (l) local *ad valorem* taxing authorities, (m) the twenty largest unsecured creditors, and (n) all other parties that filed a notice of appearance and demand for service of papers in the Debtor's bankruptcy case under Bankruptcy Rule 9010(b).

28. The cost of mailing notice to all creditors in this Chapter 11 Case would be extremely expensive, and would not, in the Debtor's view, confer any substantial benefit on the Debtor, its estate, its creditors, or other parties-in-interest. Accordingly, and in light of the relief requested, the Debtor respectfully requests that any further notice of the Hearing and of the relief requested, other than as provided for in the Motion, be dispensed with and waived.

## NO PRIOR REQUEST

No prior request for the relief sought herein has been made to this or any other court.

## CONCLUSION

Wherefore, the debtor respectfully requests that this Court (i) enter the Interim Order substantially in the form attached hereto as <u>Exhibit A</u> granting the relief requested therein, (ii) grant the Debtor the on-going right to use Cash Collateral pursuant to the terms of a Final Order, and (iii) set a hearing on the Final Order on or before March 15, 2018, and (iv) award such other and further relief as it deems just and proper.

Respectfully submitted,

*/s/ Glenn B. Rose*
Paul G. Jennings, TN Bar No. 14367
Glenn B. Rose, TN Bar No. 10598
Gene L. Humphreys, TN Bar No. 21807
Bass, Berry & Sims PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone (615) 742-6200
Facsimile (615) 742-6293
pjennings@bassberry.com
grose@bassberry.com
ghumphreys@bassberry.com

*Proposed Counsel for Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served this 9th day of February, 2018 upon all parties and via the method indicated on the attached Service List.

/s/ Glenn B. Rose

**SERVICE LIST**

| Government Agencies | Overnight delivery | Email | Fax |
|---|---|---|---|
| U.S. Trustee<br>200 Jefferson Avenue, Suite 400<br>Memphis, TN 38103 | | ustpregion08.me.ecf@usdoj.gov | |
| U.S. Attorney<br>109 South Highland Avenue, Suite 300<br>Jackson, TN 38301 | | | 731-422-6668 |
| TN Attorney General, Bankr. Unit<br>Office of the Attorney General and Reporter<br>PO Box 20207<br>Nashville, TN 37202-0207 | | | 615-741-2009 |
| **Secured Creditors** | | | |
| IberiaBank<br>c/o James E. Bailey III<br>R. Campbell Hillyer<br>Butler Snow LLP<br>6075 Poplar Avenue, Suite 500<br>Memphis, TN 38119 | | Jeb.bailey@butlersnow.com;<br>cam.hillyer@butlersnow.com | |
| Internal Revenue Service<br>801 Broadway MDP 146<br>Nashville, TN 37203 | | John.Hallman@irs.gov<br>Patricia.Waln@irs.gov<br>John.D.Chaffin@irs.gov | |
| **20 Largest Unsecured Creditors** | | | |
| Aggreko<br>PO Box 972502<br>Dallas, TX 75397-2562 | | | 901-873-4740 |
| Andrew Myers PC<br>3900 Essex Lane, Suite 800<br>Houston, TX 77027-5198 | | info@andrewsmyers.com | 713-850-4211 |
| Apache Industrial Services<br>PNC Bank, N.A.<br>Lockbox 677381<br>Dallas, TX 75267-7381 | | | 713-450-2447 |
| Applied Technical Services<br>1049 Triad Court<br>Marietta GA 30062 | X | | |
| Bank of America<br>P.O. Box 15710<br>Wilmington DE 19886-5710 | X | | |
| EWING Tool<br>15103 Copping Drive<br>Baton Rouge, LA 70810 | | sales@hytorclouisiana.com | |
| Falk LLC<br>5979 McMcasland Ave<br>Suite 100<br>Portage IN 46368 | X | | |
| Gulf Coast Marine<br>PO Box 2088<br>501 Stimrad Road<br>Mobile, AL 36652 | | mobile@gulfcoastmarine.com | |
| H&E Equipment<br>PO Box 849850<br>Dallas, TX 75284 | | rjulien@he-equipment.com | 972-642-4422 |

| Name/Address | | Email | Phone |
|---|---|---|---|
| Horne LLP<br>26 Security Drive<br>Jackson, TN 38305 | | debbie.wyatt.com@hornellp.com | |
| Infinity Construction Services<br>PO Box 327<br>Clute, TX 77531 | | | 979-265-9281 |
| International Rivers Inc.<br>600 E 2nd Street<br>Salem, OH 44460 | | info@intrivers.com | |
| Keith Inc. 20701 FM 521<br>Rosharon TX 77583 | X | | |
| MRC Global Inc<br>P.O. Box 204392<br>Dallas TX 75320-4392 | | | 972-606-2615 |
| NES Rentals<br>P.O. Box 205572<br>Dallas TX 75320-5572 | X | | |
| Nudraulix<br>P.O. Box 7365<br>311 Air Court<br>Mobile AL 36607 | X | | |
| Pipe Spool Services LLC<br>1520 richland Hollow Lane<br>Friendswood, TX 77546 | | info@pipespoolservices.com | |
| Sunbelt Rentals<br>PO Box 409211<br>Atlanta, GA 30384 | | pcm055@sunbeltrentals.com | 404-367-9074 |
| Universal Limited Inc.<br>PO Box 61007<br>Birmingham, AL 35261 | | contactus@universalltd.com | 205-833-6045 |
| Water and Wastewater Services<br>91 McNeely Rd<br>Marion AR 72364 | X | | |
| **Other** | | | |
| Law Offices of David A. Scotti<br>Manor Oak Two, Suite 365<br>1910 Cochran Road<br>Pittsburgh, PA 15220 | | dascotti@scottilaw.net | |
| Red-D-Arc Inc.<br>685 Lee Industrial Blvd<br>Austell, GA 30168 | | elizabeth.duncan@airgas.com | |
| Pinnacle Bank (formerly Magna Bank)<br>ATTN: Harold Carpenter<br>150 3rd Avenue South<br>Suite 900<br>Nashville TN 37201 | X | | |
| Fox, Swibel, Levin & Carroll, LLP<br>200 W. Madison Street, Suite 3000<br>Chicago, IL 60606-3417 | | jcoleman@foxswibel.com | |
| Hartford Accident and Indemnity Company<br>Hartford Casualty Insurance Company<br>One Hartford Plaza<br>Hartford CT 06115 | X | | |

12

| | | | |
|---|---|---|---|
| Haywood County Trustee<br>1 N Washington<br>Brownsville, TN 38012 | | | 731-772-8391 |
| City of Brownsville, Lisa Brooks, City Clerk<br>PO Box 449<br>Brownsville, TN 38012 | | lbrooks@brownsvilletn.gov | |
| Madison County Trustee's Office<br>100 E Main Street<br>Jackson, TN 38301 | | trustee@madisoncountytn.gov | |
| Jackson City Tennessee Revenue Office<br>101 E Main Street<br>Jackson, TN 38301 | | kbell@cityofjackson.net | |