# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | CASE NO. 18-10261 |
| SOUTHERN INDUSTRIAL | ) | |
| MECHANICAL MAINTENANCE | ) | CHAPTER 11 |
| COMPANY, LLC, | ) | |
| | ) | JUDGE JIMMY L. CROOM |
| Debtor. | ) | |
| | ) | |

### DECLARATION OF DAVID BLURTON, PRESIDENT AND CEO
### OF SOUTHERN INDUSTRIAL MECHANICAL MAINTENANCE COMPANY, LLC, IN SUPPORT OF VARIOUS FIRST DAY RELIEF

David Blurton, being duly sworn, deposes and states:

1.      I am the President and CEO of Southern Industrial Mechanical Maintenance Company, LLC, a Tennessee limited liability company, the debtor in the above-captioned chapter 11 case ("SIMMCO," or the "Debtor" or "Company").  The above-captioned case is referred to as the "Chapter 11 Case."

2.      On February 9, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

3.      To enable the Debtor to conduct the Chapter 11 Case in as efficient manner as possible, the Debtor has requested various types of relief in certain "first day motions" (each, a "First Day Motion" and collectively, the "First Day Motions").  The First Day Motions seek relief aimed at, among other goals, (a) ensuring the continuation of the Debtor's cash management system; (b) securing the post-petition use of cash collateral to the extent necessary to conduct the Chapter 11 Case; (c) providing for the post-petition payment of employee wages in the normal course of business and payroll schedule, and (d) granting an extension of time in

which to file statements and schedules.  The achievement of these goals will be critical to the success of the Chapter 11 Case.

4.      I submit this Declaration (the "Declaration") in support of the First Day Motions. I am familiar with the contents of each First Day Motion and believe that the relief sought is necessary to preserve the value of the Debtor's assets and serves the best interests of the Debtor, the Debtor's estate, creditors and other parties-in-interest.

5.      Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, materials provided by my staff, information (including regarding the Company's operations and its financial condition) provided by the Debtor, its officers and employees or information obtained from my review of relevant documents.  If called upon to testify, I would competently testify to the facts set forth herein.  I am authorized to submit this Declaration on behalf of the Debtor.

6.      Part I of this Declaration describes the Debtor's prepetition indebtedness, cash flow issues, and the circumstances surrounding the commencement of this Chapter 11 Case.  Part II sets forth the additional specific facts in support of each of the First Day Motions.

## PART I

**A.      Southern Industrial History**

1.      SIMMCO is a highly recognized mechanical contractor and pipe fabricator headquartered in Brownsville, Tennessee, that has been in business since 1977.  Over the years, it has worked on the construction of large industrial facilities, and it has several significant maintenance contracts.  Currently, SIMMCO employs approximately 75 individuals.

2.      Prior to 2014, SIMMCO was a successful enterprise, with revenues of approximately $35 million in some years.  In 2014, SIMMCO entered into a subcontract related to the construction of a steel mill in Shreveport, Louisiana.  The project did not go well, and

SIMMCO advanced large sums of money to complete its work on the project even though the general contractor refused to pay SIMMCO.

3.  SIMMCO timely filed a lien for its work on the disputed Louisiana project and initiated litigation to collect the amounts owed to it.  SIMMCO sued for $27 million including overhead and profit. SIMMCO and the general contractor ultimately agreed to resolve the dispute through binding arbitration, and in December 2017, the arbitration panel awarded SIMMCO only $4.5 million. SIMMCO believes that most of this award will have to be paid to a company who funded the litigation and asserts a lien on the award.

4.  SIMMCO had expected to use the award from the arbitration to pay down the debt owed to IberiaBank, its largest lender, as well as amounts owed to the IRS.  After the arbitration award was entered, IberiaBank demanded payment in full of all amounts owed and initiated an action in federal district court seeking appointment of a receiver.

5.  As a result of the Louisiana project problems and costs advanced in connection with that project, SIMMCO was in 2015 and 2016 unable to pay other debts timely, including some of its withholding obligations to the IRS.  The IRS ultimately filed a lien for the amounts owed, which hampered SIMMCO's ability to get work on new projects, and SIMMCO's revenues dropped significantly.  SIMMCO's business has now stabilized, and prospects for new business are good.  SIMMCO filed this voluntary bankruptcy case with a goal of reorganizing its financial obligations and returning its business to pre-2014 levels of success.

**B.**   **Prepetition Secured Debt**

6.  To my knowledge, two creditors assert an interest in the cash collateral that the Debtor seeks to use under its Cash Collateral Motion.  One creditor is the Internal Revenue Service ("IRS"), and the other is IberiaBank ("Iberia"). Iberia Bank filed a UCC-1 financing statement against Debtor on June 2, 2014 asserting a security interest in the Debtor's accounts

and other assets. Iberia asserts that the Debtor owes it more than $28 million.  On March 7, 2016 and on May 27, 2016, the IRS filed notices of Federal Tax Liens against the Debtor with the Register of Deeds for Haywood County, Tennessee.  The liens are for unpaid taxes from 2015 and are in an amount exceeding $2.75 million.

7.     Iberia, the IRS and other creditors assert security interests in other assets owned by the Debtor.  Iberia holds deeds of trust on real property owned by the Debtor, and there are also liens against these properties for unpaid property taxes. Iberia also asserts liens against many of the Debtor's vehicles and equipment.  Fox, Swibel and attorney David Scotti assert liens against the Debtor's recovery in the arbitration proceeding.   Other creditors hold security interests in individual pieces of equipment.

## PART II

8.     Shortly after the filing of this Chapter 11 Case, the Debtor filed several First Day Motions.   I believe that approval of each First Day Motion is an important element of the Debtor's bankruptcy efforts and is necessary to ensure a smooth transition into bankruptcy and a successful Chapter 11 Case.  I believe that the relief requested therein is critical to the Debtor's ability to achieve a successful reorganization and to maximize the value of the Debtor's assets. Factual information with respect to each First Day Motion is provided below and in each First Day Motion.

**A.     Motion of Debtor for Order Pursuant To 11 U.S.C. Section 105(a), 363, 364, And 503(b)(1) And Fed. R. Bankr. P. 6003 Authorizing Continued Maintenance of Certain Existing Bank Accounts, and Authorizing Continued Use of Certain Existing Business Forms and Checks (the "Cash Management Motion")**

9.     Prior to the commencement of this Chapter 11 Case, in the ordinary course of its business, the Debtor maintained two bank accounts with Regions Bank out of which it manages cash receipts and disbursements (the "Bank Accounts").  A list of the Bank Accounts follows:

| ACCOUNT NAME | LAST 4 digits of Account Number | Purpose | Bank |
|---|---|---|---|
| 1.  Operating Account | 9498 | Funding | Regions Bank |
| 2.  Payroll Account | 1281 | Payroll | Regions Bank |

I believe Regions Bank to be a financially stable banking institution with FDIC insurance (up to the applicable limit).

10.     The Debtor seeks a waiver of the U.S. Trustee's requirement that the prepetition Bank Accounts be closed and that new postpetition bank accounts be opened.  If enforced in this case, such a requirement would cause disruption in collection of accounts receivable and would impair the Debtor's efforts to maximize the value of its estate.

11.     Accordingly, in order to ensure a smooth transition into Chapter 11 with minimal disruption, the Debtor must be permitted to continue to maintain its existing Bank Accounts at Regions Bank.

12.     In addition, in order to minimize expenses to its estate, the Debtor also seeks authorization to continue using certain of its business forms and checks existing immediately prior to the Petition Date, without reference to the Debtor's status as a debtor-in-possession.

13.     Changing business forms and checks would be expensive, unnecessary, and burdensome to the Debtor's estates.  Furthermore, doing so would not confer any benefit upon those dealing with the Debtor, because each of the Debtor's vendors will receive direct notice of the commencement of the respective Chapter 11 Cases.  For these reasons, the Debtor requests that it be authorized to use certain of its existing checks and business forms without being required to place the label "Debtor-In-Possession" on each.

**B.** **Motion of Debtor for Interim and Final Orders Authorizing Debtor To Use Cash Collateral, Providing Adequate Protection, And Prescribing Form And Manner Of Notice And Time For Final Hearing (the "Cash Collateral Motion").**

14.     The Debtor seeks authority to use collections of its accounts receivable and other cash on the terms set forth in the Cash Collateral Motion.

15.     The Debtor requires the use of Cash Collateral to pay certain expenses in the ordinary course of its business, including payroll and other routine items. Unless the Court authorizes the use of Cash Collateral, the Debtor will be unable to pay its employees or for goods and services and other expenses necessary to preserve and maximize the value of its assets. Thus, authorization to use Cash Collateral, pending the Final Hearing, is in the best interests of the Debtor's estate, its creditors, and other parties-in-interest.

16.     As outlined in the Cash Collateral Motion, I believe that the Debtor will suffer immediate and irreparable harm and injury if it is not authorized to continue using Cash Collateral.  In short, I do not believe the business can continue to operate as a going concern without using Cash Collateral.

**C.** **Motion of the Debtor for an Order (A) Authorizing the Debtor to Pay Certain Prepetition (i) Wages and Salaries, (ii) Reimbursable Employee Expenses, and (iii) Employee Medical And Similar Benefits and (B) Authorizing and Directing Banks and Other Financial Institutions to Honor All Related Checks and Electronic Payment Requests (the "Employee Wage Motion").**

17.     In the Employee Wage Motion, the Debtor seeks authority to pay and honor, in the ordinary course of business, prepetition and postpetition claims and obligations related to (a) Unpaid Compensation and Benefits, (b) Deductions and Payroll Taxes, (c) Reimbursable Expenses, and (d) the Employee Benefit Programs, all as defined and described in more detail in the Employee Wage Motion.

18.     In addition, the Debtor is requesting that banks and other financial institutions be authorized and directed to receive, process, honor and pay all payroll checks presented for

payment, whether such checks were presented prior to or after the Petition Date.  The Debtor is also requesting that all such banks and financial institutions be authorized to rely on the Debtor's designation of any particular check or electronic payment request as appropriate pursuant to this Motion.

19.     The Debtor seeks this authorization because the employees are essential to the continued operation of the Debtor's business and, absent an order granting the relief requested by this Motion, the employees will suffer undue hardship and, in many instances, serious financial difficulties, as the amounts in question are needed to enable the Employees to meet their own personal financial obligations. Moreover, the Debtor believes that, without the requested relief, the continued operation of the Debtor's business will be undermined and value to the estate will be irreparably harmed. The commencement of this Chapter 11 Case will likely create employee anxiety, and the requested relief is critical to stabilizing these concerns.

20.     As of the Petition Date, the Debtor employs approximately 75 employees ("Employees").  Most of the employees are paid for their work on an hourly basis, but some are paid on a salaried basis.

21.     In the ordinary course of business, the Debtor incurs payroll obligations to the Employees.  Such obligations are generally comprised of wages and salaries.  Employees are normally paid each Friday for work performed through the preceding Sunday.

22.     Payrolls are normally funded approximately one business day prior to the payment date by transferring the required funds to the Regions Bank Payroll Account (the "Payroll Account") as directed by the Debtor.  All of the Debtor's employees currently receive paper checks, but the Debtor anticipates establishing a direct deposit pay system in the near future using the Regions payroll account.

23.    Because all of the Employees are paid in arrears, as of the Petition Date, Employees have not been paid all of their prepetition wages (the "Unpaid Compensation").  As of the Petition Date, Employees have not been paid for wages accrued during the period from February 3 until the Petition Date.  In an effort to avoid disruption to the employees, some of whom have no savings, the payroll for the last week in January was paid by money orders obtained prior to the filing of this Case, and the remainder of accrued prepetition wages and benefits are due to be paid on February 16, 2018.  Further, some Employees may be entitled to compensation because (a) discrepancies may exist between the amounts paid and the amounts that should have been paid, and (b) some payroll checks issued to Employees on or prior to the Petition Date may not have been presented for payment or may not have cleared the banking system and, accordingly, have not been honored and paid as of the Petition Date.  Further, some employees are entitled to expense reimbursements on account of prepetition expenditures.

24.    The Debtor anticipates that the payroll due on Friday, February 16, 2018 will be in the approximate amount of $80,000.00.  The weekly payroll amount varies depending on the number of hours worked by the non-salaried employees.  The Debtor asserts that, as of the Petition Date, no Employee is owed more than $12,850.00 for Unpaid Compensation or other benefits.

25.    During each applicable pay period, the Debtor routinely deducts certain amounts from paychecks, including, without limitation, (a) garnishments, child support and similar deductions and (b) other pretax and after-tax deductions payable pursuant to certain of the Employee benefit plans discussed herein (such as an Employee's share of health care benefits and insurance premiums, 401(k) contributions, legally ordered deductions and miscellaneous deductions) (collectively, the "Deductions").  The Debtor forwards the amount of the Deductions

to the appropriate third-party recipients.  Certain Deductions that were deducted from Employees' earnings in 2018 have not yet been forwarded to the appropriate third-party recipients as of the Petition Date.  Accordingly, the Debtor seeks authority to continue to forward all prepetition and post-petition Deductions to the applicable third-party recipients.

26.     Further, the Debtor is required by law to withhold from an Employee's wages amounts related to federal, state and local income taxes, social security and Medicare taxes for remittance to the appropriate federal, state or local taxing authority (collectively, the "Withheld Amounts").  The Debtor must then match from its own funds for social security and Medicare taxes and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance (the "Employer Payroll Taxes," and together with the Withheld Amounts, the "Payroll Taxes").  The Debtor seeks authority to continue to make, honor and process all prepetition and postpetition payments for Payroll Taxes, which obligations generally range between $15,000 and $20,000 per week.

27.     Prior to the Petition Date, the Debtor reimbursed Employees for certain expenses incurred on behalf of the Debtor in the scope of their employment (the "Reimbursable Expenses").  The Reimbursable Expenses include, without limitation, certain travel expenses and expenses for maintaining cellular telephones that are used in the scope of employment.

28.     The Reimbursable Expenses were all incurred on the Debtor's behalf and with the understanding that they would be reimbursed.  Accordingly, to avoid harming Employees who incurred the Reimbursable Expenses, the Debtor requests authority to (a) continue reimbursing the Reimbursable Expenses in accordance with prepetition practices, (b) modify its prepetition policies relating thereto as it deems appropriate, and (c) pay all Reimbursable Expenses that (i) accrued prepetition and (ii) accrue postpetition but relate to the prepetition period.

29.     The Debtor offers its Employees the ability to participate in a number of insurance and benefits programs, including health care, vacation time and other paid leaves of absence, retirement savings plans, and the other insurance plans (collectively, the "Employee Benefits Plan").

30.     The Debtor's group health plan is through Blue Cross Blue Shield (the "Medical Plan").  The Debtor and Employees share the costs of premiums for the Medical Plan, with the amount of benefit paid by the Debtor ranging from fifty percent to one-hundred percent depending upon the employee's length of service.  The Debtor's monthly share of Medical Plan premiums for February 2018 have not been paid and are slightly less than $20,000.00.

31.     Other insurance benefits are available to the Employees through various providers on an employee-paid basis, such as disability and life insurance ("Supplemental Plans").

32.     Prior to the Petition Date, the Debtor incurred certain administrative obligations to the third party administrators, which have not yet been paid.

33.     In order to maintain good relations with its employees, the Debtor seeks authority to (a) continue the Medical Plan, the Supplemental Plans, and all other employee insurance plans in the ordinary course of business, (b) continue making the above-described contributions to such benefit programs, and (c) pay any amounts related thereto, including on account of any premiums and claim amounts, to the extent that they remain unpaid as of the Petition Date.

34.     Prior to the Petition Date, the Debtor provided workers' compensation insurance for its Employees at the statutorily-required level (the "Workers' Compensation Program").  These benefits are currently provided for Employees through a fully insured program, which provides full coverage for all workers compensation claims.  The worker's compensation coverage is bundled with Debtor's other commercial insurance products.  The Debtor finances

this premium and currently owes one payment of approximately $60,000.00, which when made, will pay all premiums due through the remainder of the policy period, which ends in May.  The Debtor also pays directly some first aid and other incidental expenses arising from workplace injuries.

35.     Certain benefits and obligations under the Workers' Compensation Program have been incurred prepetition but have yet to be fully paid, and certain other claims were filed prepetition but have yet to be resolved.  By this Motion, the Debtor requests authority to continue and maintain its Workers' Compensation Program in the ordinary course of business and to pay any and all prepetition and postpetition amounts related thereto including, without limitation, any payments for workers' compensation claims, premiums and fees owed for administrative costs and other amounts required in connection with the Workers' Compensation Program, as such amounts become due in the ordinary course of the Debtor's business.

36.     The Debtor provides its Employees with a paid time-off benefit that allows the Employee to take time off from work for vacation, illness, or personal time with pay ("PTO").  The amount of PTO available to a particular Employee and the rate at which such PTO accrues is generally determined by the Employee's position and the length of full-time employment.  When an Employee elects to take PTO, the Employee is paid his or her regular hourly or salaried rate.

37.     In order to maintain good relations with its employees, the Debtor requests that it be authorized to continue to honor its PTO policies in the ordinary course of business, and to honor and pay any prepetition amounts related thereto.  In this regard, even in the event Employees utilize accrued prepetition PTO in the ordinary course of business, those events will not create any material cash flow requirements beyond the Debtor's normal payroll obligations.

38.    The Debtor currently maintains a retirement savings plan meeting the requirements of Section 401(k) of the Internal Revenue Code for the benefit of certain Employees (the "401(k) Plan").  The 401(k) Plan allows for automatic pre-tax salary deductions of eligible compensation up to the limits set by the Internal Revenue Code. The total contributions to this program are small, generally totaling less than $1,000 per week.

39.    The gross amount owing for periods prior to the Petition Date for prepetition employee obligations, including all withholdings and payments made on behalf of Employees and Employee Benefit Plans, is expected to be approximately $100,000.00.

**D.    Expedited Motion for Order Granting Additional Time to File Statements and Schedules**

40.    The Debtor has a small accounting staff and has not had time to begin working on the mandatory Schedules and Statement of Financial Affairs.  Additionally, the Debtor's operations, assets and liabilities are relatively large and somewhat complex.  In order to have adequate time to prepare these necessary filings in a complete and thorough manner, the Debtor needs 30 days from the Petition Date, and the Debtor respectfully requests that the Court grant it this extension of time.

/s/ David Blurton
David Blurton
President
Southern Industrial Mechanical
Maintenance, LLC

## **Certificate of Service**

I hereby certify that a true and correct copy of the foregoing document has been served this 9th day of February, 2018 upon all parties and via the method indicated on the attached Service List.

/s/  Glenn B. Rose

**SERVICE LIST**

| Government Agencies | Overnight delivery | Email | Fax |
|---|---|---|---|
| U.S. Trustee<br>200 Jefferson Avenue, Suite 400<br>Memphis, TN 38103 | | ustpregion08.me.ecf@usdoj.gov | |
| U.S. Attorney<br>109 South Highland Avenue, Suite 300<br>Jackson, TN 38301 | | | 731-422-6668 |
| TN Attorney General, Bankr. Unit<br>Office of the Attorney General and Reporter<br>PO Box 20207<br>Nashville, TN 37202-0207 | | | 615-741-2009 |
| Secured Creditors | | | |
| IberiaBank<br>c/o James E. Bailey III<br>R. Campbell Hillyer<br>Butler Snow LLP<br>6075 Poplar Avenue, Suite 500<br>Memphis, TN 38119 | | Jeb.bailey@butlersnow.com;<br>cam.hillyer@butlersnow.com | |
| Internal Revenue Service<br>801 Broadway MDP 146<br>Nashville, TN 37203 | | John.Hallman@irs.gov<br>Patricia.Waln@irs.gov<br>John.D.Chaffin@irs.gov | |
| 20 Largest Unsecured Creditors | | | |
| Aggreko<br>PO Box 972502<br>Dallas, TX 75397-2562 | | | 901-873-4740 |
| Andrew Myers PC<br>3900 Essex Lane, Suite 800<br>Houston, TX 77027-5198 | | info@andrewsmyers.com | 713-850-4211 |
| Apache Industrial Services<br>PNC Bank, N.A.<br>Lockbox 677381<br>Dallas, TX 75267-7381 | | | 713-450-2447 |
| Applied Technical Services<br>1049 Triad Court<br>Marietta GA 30062 | X | | |
| Bank of America<br>P.O. Box 15710<br>Wilmington DE 19886-5710 | X | | |
| EWING Tool<br>15103 Copping Drive<br>Baton Rouge, LA 70810 | | sales@hytorclouisiana.com | |
| Falk LLC<br>5979 McMcasland Ave<br>Suite 100<br>Portage IN 46368 | X | | |
| Gulf Coast Marine<br>PO Box 2088<br>501 Stimrad Road<br>Mobile, AL 36652 | | mobile@gulfcoastmarine.com | |
| H&E Equipment<br>PO Box 849850<br>Dallas, TX 75284 | | rjulien@he-equipment.com | 972-642-4422 |

| | | | |
|---|---|---|---|
| Horne LLP 26 Security Drive Jackson, TN 38305 | | debbie.wyatt.com@hornellp.com | |
| Infinity Construction Services PO Box 327 Clute, TX 77531 | | | 979-265-9281 |
| International Rivers Inc. 600 E 2nd Street Salem, OH 44460 | | info@intrivers.com | |
| Keith Inc. 20701 FM 521 Rosharon TX 77583 | X | | |
| MRC Global Inc P.O. Box 204392 Dallas TX 75320-4392 | | | 972-606-2615 |
| NES Rentals P.O. Box 205572 Dallas TX 75320-5572 | X | | |
| Nudraulix P.O. Box 7365 311 Air Court Mobile AL 36607 | X | | |
| Pipe Spool Services LLC 1520 richland Hollow Lane Friendswood, TX 77546 | | info@pipespoolservices.com | |
| Sunbelt Rentals PO Box 409211 Atlanta, GA 30384 | | pcm055@sunbeltrentals.com | 404-367-9074 |
| Universal Limited Inc. PO Box 61007 Birmingham, AL 35261 | | contactus@universalltd.com | 205-833-6045 |
| Water and Wastewater Services 91 McNeely Rd Marion AR 72364 | X | | |
| Other | | | |
| Law Offices of David A. Scotti Manor Oak Two, Suite 365 1910 Cochran Road Pittsburgh, PA 15220 | | dascotti@scottilaw.net | |
| Red-D-Arc Inc. 685 Lee Industrial Blvd Austell, GA 30168 | | elizabeth.duncan@airgas.com | |
| Pinnacle Bank (formerly Magna Bank) ATTN: Harold Carpenter 150 3rd Avenue South Suite 900 Nashville TN 37201 | X | | |
| Fox, Swibel, Levin & Carroll, LLP 200 W. Madison Street, Suite 3000 Chicago, IL 60606-3417 | | jcoleman@foxswibel.com | |
| Hartford Accident and Indemnity Company Hartford Casualty Insurance Company One Hartford Plaza Hartford CT 06115 | X | | |

| | | | |
|---|---|---|---|
| Haywood County Trustee<br>1 N Washington<br>Brownsville, TN 38012 | | | 731-772-8391 |
| City of Brownsville, Lisa Brooks, City Clerk<br>PO Box 449<br>Brownsville, TN 38012 | | lbrooks@brownsvilletn.gov | |
| Madison County Trustee's Office<br>100 E Main Street<br>Jackson, TN 38301 | | trustee@madisoncountytn.gov | |
| Jackson City Tennessee Revenue Office<br>101 E Main Street<br>Jackson, TN 38301 | | kbell@cityofjackson.net | |